UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JAN 1 3 2011

JUDGE WILLIAM J. HIBBLER
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 CR 362 |
| vs. | ) | Honorable William J. Hibbler |
| | ) | |
| ASKIA EUBANKS | ) | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ASKIA EUBANKS, and his attorney, JACK FRIEDLANDER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.    The indictment in this case charges defendant with conspiring with others to knowingly and intentionally possess with intent to distribute and to distribute controlled substances, namely, one kilogram or more of mixtures and substances containing heroin and five kilograms or more of mixtures and substances containing cocaine, in violation of Title 21, United States Code, Section 846.

3.    Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with conspiracy to possess with intent to distribute and to distribute controlled substances, namely, one kilogram or more of heroin and five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning as early as 2009 and continuing through April 2010, in Tinley Park and elsewhere in the Northern District of Illinois, Eastern Division, defendant ASKIA EUBANKS, aka "Bonifacio," aka "Bon" (hereinafter "EUBANKS"), conspired with others, including Antonio Mendoza, aka 'Tonio," aka "Monster" (hereinafter "Mendoza"), Roberto Sandoval-Velazco (hereinafter "Sandoval-Velazco"), Manuel Chavez, aka "Meno" (hereinafter "Chavez"), Individual A, and with others known and unknown, knowingly and intentionally to possess with intent to distribute and to distribute controlled substances, namely, one kilogram or more of mixtures and substances containing a detectable amount of

2

heroin, a Schedule I Narcotic Drug Controlled Substance, and five kilograms or more of mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846.

Specifically, beginning as early as 2009, EUBANKS arranged to obtain kilogram quantities of cocaine and heroin in telephone conversations with Individual A, a Mexican-based source of supply of cocaine and heroin. During these conversations with Individual A, EUBANKS placed orders and negotiated the price for kilogram quantities of cocaine and heroin, with Individual A agreeing to "front" the narcotics to EUBANKS, that is, to provide EUBANKS with the heroin and cocaine on credit wiht the understanding that EUBANKS would pay for the narcotics once EUBANKS had sold them to his own customers.

After EUBANKS placed the order, Individual A instructed Mendoza, Sandoval-Velazco, and other coconspirators to deliver the kilogram quantities of cocaine and heroin to EUBANKS in the greater Chicagoland area. Within a few days of receiving the cocaine and heroin, EUBANKS sold the wholesale quantities of cocaine and heroin to his customers in the Chicagoland area and used portions of the proceeds for these sales to pay Mendoza, Sandoval-Velazco, and others for the cocaine and heroin that had been fronted to him at the direction of Individual A.

For example, on February 23, 2010, Mendoza, at the direction of Individual A, fronted 15 kilograms of cocaine to EUBANKS at 60 Iliad Drive in Tinley Park, Illinois. During the

meeting, Mendoza placed a telephone call to Individual A, who instructed Mendoza to leave 15 kilograms of cocaine with EUBANKS.

On April 12, 2010, Mendoza and Sandoval-Velazco, again at the direction of Individual A, fronted 10 kilograms of cocaine to EUBANKS during a meeting that occurred in the parking lot of an apartment complex in Tinley Park, Illinois. The following day, April 13, 2010, Mendoza fronted an additional 5 kilograms of cocaine to EUBANKS in the parking lot of the same apartment complex in Tinley Park. During that meeting, EUBANKS provided Mendoza with a payment of approximately $205,000 in narcotics proceeds for the kilograms of cocaine that Mendoza and Sandoval-Velazco had previously fronted to him at the direction of Individual A.

EUBANKS also received on a fronted basis from Individual A, Mendoza, and Sandoval Velazco: (1) approximately 7 kilograms of cocaine on or about February 20, 2010; (2) approximately 4 kilograms of cocaine on or about February 24, 2010; (3) approximately 8 kilograms of cocaine on or about March 20, 2010; (4) approximately 1.5 kilograms of heroin on or about April 22, 2010; (5) approximately 5 kilograms of cocaine on or about April 23, 2010; and (6) approximately 1 kilogram of heroin on or about April 25, 2010.

EUBANKS also acknowledges that he provided to Mendoza and Sandoval-Velazco as payment for fronted kilograms of cocaine and heroin the following amounts in narcotics proceeds: (1) approximately $261,000 on or about March 1, 2010; (2) approximately $160,000 on or about March 22, 2010; (3) approximately $80,000 on or about March 27,

2010; (4) approximately $115,500 on or about April 5, 2010; and (5) approximately $144,900 on or about April 22, 2010.

EUBANKS acknowledges that he received at least 50 kilograms of cocaine and at least two and a half kilograms of heroin from Individual A and others for distribution to others.

### Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $4,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2010 Guidelines Manual.

    b.      **Offense Level Calculations.**

        i.      The amount of controlled substances involved in the offense for which defendant is accountable is more than 50 kilograms of cocaine and approximately two and one-half kilograms of heroin. Pursuant to Application Note 10(B) to Guideline §2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted to its marijuana equivalent, combined, and then referred to the Drug Quantity Table in §2D1.1 to obtain the combined offense level. Combining the marijuana equivalents for the cocaine and heroin for which the defendant is accountable equals 12,500 kilograms of marijuana. Therefore the base offense level is 36, pursuant to

6

Guideline §§2D1.1(a)(5) and 2D1.1(c)(2). However, as set forth in paragraph 9(c) below, defendant is a career offender under Guideline § 4B1.1(b) and his base offense level is therefore, 37, based on a statutory maximum of life imprisonment.

ii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.     In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, it is the government's position that defendant's criminal

history points equal 16 and defendant's criminal history category is VI. Further, based on the facts now known to the government, defendant is also a career offender based upon two or more convictions for a crime of violence or a controlled substance offense as set forth in subsections (iii) through (vi) below. Thus, pursuant to Guideline § 4B1.1(b), defendant's criminal history category is VI:

       i.     On or about May 30, 1997, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois and sentenced to six months' supervision. Pursuant to Guideline to § 4A1.2(e), defendant receives zero criminal history points for this conviction.

       ii.    On or about February 25, 1998, defendant was convicted of battery/bodily harm in the Circuit Court of Cook County, Illinois and sentenced to six months' conditional discharge. Pursuant to Guideline § 4A1.2(e), defendant receives zero criminal history points for this conviction.

       iii.   On or about November 2, 1999, defendant was convicted of aggravated discharge of a firearm in the Circuit Court of Cook County, Illinois, in case number 98CR2678001, and sentenced to four years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

       iv.   On or about November 2, 1999, defendant was convicted of manufacture/delivery of 1-15 grams of cocaine in the Circuit Court of Cook County, Illinois, in case number 99C66125101, and sentenced to six years' imprisonment. Defendant was

arrested for this offense on September 12, 1998. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

        v.      On or about November 2, 1999, defendant was convicted of manufacture/delivery of between 15 and 100 grams of cocaine, in case numbers 99C66125001 and 99C66125301, and the manufacture/delivery of between 1 and 15 grams of cocaine in the Circuit Court of Cook County, Illinois, in case number 99C66125201, and sentenced to six years' imprisonment. Defendant was arrested for these offenses on July 23, 1999. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(a)(2), it is the government's position that defendant receives three criminal history points for these convictions. Defendant reserves the right to disagree that he receives three criminal history points for these convictions.

        vi.      On or about August 9, 2006, defendant was convicted of possession of 10 to 30 grams of cannabis in the Circuit Court of Cook County, Illinois and was sentenced to one year's supervision. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

        vii.      On or about October 14, 2008, defendant was convicted of aggravated fleeing of the police in the Circuit Court of Cook County, Illinois and was sentenced to 17 months' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

viii.    Defendant committed the instant offense while under a criminal justice sentence, namely a term of parole for the conviction described above in paragraph 9(c)(vii). Pursuant to Guideline § 4A1.1(d), defendant receives two criminal history points.

d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 37. Therefore, following an adjustment for acceptance of responsibility and pursuant to Guideline § 4B1.1(b), the offense level of 34 applies, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 262 to 327 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

     f.     Defendant understands that the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

     10.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

     11.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement,

then the government shall move the Court, pursuant to Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the low end of the applicable Guideline range or the statutory minimum sentence, whichever is higher, and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court.

12.     If the government moves the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable Guideline range or 66 percent of the statutory minimum sentence, whichever is higher. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

12

13. If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

15. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 10 CR 362.

16. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the

United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

17.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

        a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

                i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

                ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

14

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

15

b.     **Waiver of appellate and collateral rights.**  Defendant further

understands he is waiving all appellate issues that might have been available if he had

exercised his right to trial.  Defendant is aware that Title 28, United States Code, Section

1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal

his conviction and the sentence imposed.  Acknowledging this, if the government makes a

motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1,

defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the

Court, and any part of the sentence (or the manner in which that sentence was determined),

including any term of imprisonment and fine within the maximums provided by law, in

exchange for the concessions made by the United States in this Plea Agreement.  Defendant

also waives his right to challenge his conviction and sentence, and the manner in which the

sentence was determined, and (in any case in which the term of imprisonment and fine are

within the maximums provided by statute) his attorney's alleged failure or refusal to file a

notice of appeal, in any collateral attack or future challenge, including but not limited to a

motion brought under Title 28, United States Code, Section 2255.  The waiver in this

paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel,

which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from

seeking a reduction of sentence based directly on a change in the law that is applicable to

defendant and that, prior to the filing of defendant's request for relief, has been expressly

16

made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

18.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

19.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence

17

for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

21.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

22.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term

of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

19

25.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _January 14ᵗʰ 2011_


_David Hockner for PJF_                    _Askia Eu_
PATRICK J. FITZGERALD                  ASKIA EUBANKS
United States Attorney                      Defendant


_signature_                                        _signature_
STEPHEN P. BAKER                          JACK FRIEDLANDER
MEGAN CUNNIFF CHURCH               Attorney for Defendant
Assistant U.S. Attorneys


20